## STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**FILED**

**April 9, 2018**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

*In re* **E.E., C.E., A.E.-1, A.E.-2, N.E., and D.E.**

**No. 17-0973** (Hardy County 16-JA-29, 30, 31, 32, 33 and 34)

## MEMORANDUM DECISION

Petitioner Mother A.E.-3, by counsel Lauren M. Wilson, appeals the Circuit Court of Hardy County's September 28, 2017, order terminating her parental rights to E.E., C.E., A.E.-1, A.E.-2, N.E., and D.E.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Lee Niezgoda, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Marla Zelene Harmon, filed a response on behalf of the children in support of the circuit court's order. On appeal, petitioner argues that the circuit court abused its discretion in terminating her improvement period and in terminating her parental rights without imposing a less-restrictive alternative.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In April of 2016, law enforcement came to petitioner's home to take fifteen-year-old D.E. into custody pursuant to a juvenile petition and found the home in deplorable condition. In August of 2016, the DHHR offered adult life skills and parenting classes to petitioner and her husband. However, the DHHR found that petitioner required further intervention to remedy the conditions in the home. In December of 2016, the DHHR filed a petition alleging that petitioner and her husband failed to provide their children with adequate and sanitary housing, appropriate medical care, and ensure their children went to school. The petition further alleged that petitioner and her husband had participated in a previous abuse and neglect case in December of 2013, during which they received an improvement period and extensive services that dealt with the same issues. The circuit court did not order removal of the children from petitioner's custody.

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990). Additionally, because petitioner and two of the children share the same initials, we refer to the petitioner as A.E.-3 and the children as A.E.-1 and A.E.-2 throughout this memorandum decision.

1

At the adjudicatory hearing, petitioner stipulated to neglect and moved for a post-adjudicatory improvement period. Petitioner's stipulation included: failure to maintain a suitable residence, including lice and roach infestations; educational neglect, for excessive absences from school; and medical neglect, including failure to address dental issues and ensure prompt dental care. The circuit court then granted petitioner's motion for a post-adjudicatory improvement period. The children remained with petitioner until March of 2017, when a motion for removal of the children and resulting order were filed. The motion alleged that the children's conditions continued to worsen, including further absences and a severe lice infestation.

In April of 2017, the circuit court held an evidentiary hearing on the DHHR's motion to revoke petitioner's improvement period. The children's nurse practitioner testified regarding the recurring lice infestation, which spanned from 2014 until as recently as March of 2017. The nurse testified that the only time all the children were free of lice was in April of 2017, after they were removed from petitioner's custody. Also, the nurse testified that an appointment was scheduled to have A.E.-1's migraines assessed, but petitioner did not take her to that appointment. A DHHR worker testified that the lice issue was ongoing and petitioner's home was roach infested and unsanitary. The DHHR worker testified that the lice issue contributed to the truancy issue because the children needed to be clear of lice to attend school. The DHHR worked also testified that petitioner had yet to complete specific conditions of the case plan, such as weekly doctor visits for the children or acquisition of her driver's license. Petitioner was also resistant to accepting recommendations from the multidisciplinary team ("MDT") and refused to open a bank account to deposit petitioner and her husband's $9,500 tax return or track family spending. The children's foster parent testified she cleared the children of lice, and about a video she took of the lice on E.E.'s scalp before treatment. Finally, petitioner testified that she attempted to keep the house clean and made repairs to structural issues of the home. At the conclusion of the hearing, the circuit court found that petitioner demonstrated a pattern of failing to improve and did not illustrate "a likelihood to fully participate in the improvement period." However, the circuit court deferred ruling on the motion to terminate the improvement period and urged petitioner to make a vast improvement in her participation.

In May of 2017, the DHHR renewed its motion to revoke petitioner's improvement period and the circuit court held two evidentiary hearings. In support, the visitation supervisor testified that the children displayed little affection towards petitioner during visits. A DHHR worker testified that petitioner cooperated with classes and changed residences as required by the case plan; however, the worker saw cockroaches during the last two classes in the new home. This DHHR worker also testified about petitioner's tax return funds, which were already nearly exhausted. Petitioner prepared a "guesstimate" accounting of those funds, which included loans to multiple friends and little spent on her housing issues. A second DHHR worker testified that the new home had some trash accumulated on the two porches, smelled strongly of cat urine, and cat litter was thrown out next to the front porch. Ultimately, the circuit court found that petitioner was unable to rectify the conditions that led to the filing of this petition and the previous petition, and that, even with assistance, petitioner continued to experience issues with maintaining a hygienic environment. The circuit court concluded that there was no reasonable likelihood that the conditions of neglect could be remedied. Thereafter, petitioner's improvement period was revoked. The circuit court granted petitioner continued visitation with the children.

The circuit court held a dispositional hearing and the DHHR moved for the termination of petitioner's parental rights in July of 2017. A DHHR worker testified that the issues of this petition were essentially the same as petitioner's previous case in December of 2013, and, despite intervention, petitioner made little overall improvement. Petitioner testified that she was now employed and her situation was improved after the change of residence. Ultimately, the circuit court terminated petitioner's parental rights and incorporated its previous findings as a basis for the termination in its September 28, 2017 order.[2] Petitioner now appeals that order.

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011). Upon our review, this Court finds no error in the proceedings below.

Petitioner first argues that the circuit court abused its discretion by terminating her improvement period. We disagree. West Virginia Code § 49-4-610(7) provides that "[u]pon the motion by any party, the court shall terminate any improvement period granted pursuant to this section when the court finds that respondent has failed to fully participate in the terms of the improvement period[.]" This Court has held that "[i]t is within the court's discretion to terminate the improvement period before the twelve-month time frame has expired if the court is not satisfied that the defendant is making the necessary progress." Syl. Pt. 6, *In re Katie S.*, 198 W.Va. 79, 479 S.E.2d 589 (1996).

---

[2]The parental rights of the father of A.E.-1, A.E.-2, C.E., and E.E were terminated below. The father of D.E. and N.E. cannot care for the children due to his incarceration, however, his parental rights remain intact. According to respondents, the children are currently placed in a kinship home with a permanency plan of adoption or guardianship in that home. Additionally, respondents assert that an MDT will be held to address the parental rights of D.E. and N.E.'s father.

The circuit court correctly found that petitioner was not making the necessary progress in her improvement period. Petitioner admitted that she failed to maintain a sanitary residence, permitted the children to be excessively absent from school, and neglected to provide prompt and consistent medical care. The entire family was infested with lice; the children continued to miss school without excuse; and petitioner was not taking the children regularly for medical checkups or recommended specialists as the case plan required. Moreover, almost immediately after the children were removed from petitioner's care, the children were rid of their lice infestation. Petitioner changed housing as required by her case plan; however, that new housing acquired an odor and roaches after petitioner lived there for only a few weeks. Petitioner was afforded additional time to improve and received adult life skills and parenting classes, two major components of her case plan, before the petition was filed. Yet, those classes did not improve petitioner's parenting. The circuit court is granted discretion in terminating an improvement period, and we find that the circuit court did not abuse that discretion in terminating petitioner's improvement period.

Second, petitioner argues that the circuit court abused its discretion by terminating her parental rights without imposing a less-restrictive alternative. Petitioner asserts that she was a victim of poverty and her previously successful improvement period proves that she can be a non-abusing parent. We disagree.

West Virginia Code § 49-4-604(b)(6) provides that the circuit court may terminate parental rights when "there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future and, when necessary for the welfare of the child." Further, West Virginia Code § 49-4-604(c)(3) provides that there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected when the parent has "not responded to or followed through with a reasonable family case plan or other rehabilitative efforts . . . designed to reduce or prevent the abuse or neglect of the child, as evidence by the continuation or insubstantial diminution of conditions which threatened the health welfare or life of the child." Upon these findings, the circuit court may terminate a parent's parental rights without the use of less-restrictive alternatives. Syl. Pt. 5, *In re Kristin Y.*, 227 W.Va. 558, 712 S.E.2d 55 (2011).

The circuit court correctly found that there was no reasonable likelihood that the conditions of neglect could be substantially corrected in the near future and did not abuse its discretion in terminating petitioner's parental rights. Petitioner's consistent need for DHHR intervention and support is evidence that petitioner could not adequately care for her children. Since her first improvement period, petitioner continually faced the same issues of lice, unsanitary housing, and excessive absences from school. Again, once the children were removed from petitioner's care, all of these issues resolved for the children. After years of education and opportunity, petitioner could not provide the basic needs for the children. Further, petitioner's assertion that she was a victim of poverty is not compelling. Petitioner received a substantial tax refund and, by her own account, applied very little of it to remedy the circumstances that caused the neglect.

The circuit court correctly found that termination was necessary for the welfare of the children and was in the children's best interests. The controlling standard that governs any

4

dispositional decision is the best interests of the children. Syl. Pt. 4, *In re B.H.*, 233 W.Va. 57, 754 S.E.2d 743 (2014). Petitioner consistently failed to meet the children's needs in terms of medical treatment, education, and appropriate housing. On appeal, petitioner argues that returning the children under the supervision of the DHHR or with other community support would have been preferable to termination of her parental rights. However, both of those situations are the exact same circumstances as the first three months of petitioner's improvement period. During that time, petitioner failed to provide for the children's needs and removal was necessary for the children's welfare. Accordingly, we find that the circuit court did not abuse its discretion in terminating petitioner's parental rights without imposing a less-restrictive alternative.

Lastly, because the proceedings in circuit court regarding the father of D.E. and N.E. are still ongoing, this Court reminds the circuit court of its duty to establish permanency for the children. Rule 39(b) of the Rules of Procedure for Child Abuse and Neglect Proceedings requires:

> At least once every three months until permanent placement is achieved as defined in Rule 6, the court shall conduct a permanent placement review conference, requiring the multidisciplinary treatment team to attend and report as to progress and development in the case, for the purpose of reviewing the progress in the permanent placement of the child.

Further, this Court reminds the circuit court of its duty pursuant to Rule 43 of the Rules of Procedure for Child Abuse and Neglect Proceedings to find permanent placement for children within twelve months of the date of the disposition order. As this Court has stated,

> [t]he [twelve]-month period provided in Rule 43 of the West Virginia Rules of Procedures for Child Abuse and Neglect Proceedings for permanent placement of an abused and neglected child following the final dispositional order must be strictly followed except in the most extraordinary circumstances which are fully substantiated in the record.

*Cecil T.*, 228 W.Va. at 91, 717 S.E.2d at 875, Syl. Pt. 6. Moreover, this Court has stated that

> [i]n determining the appropriate permanent out-of-home placement of a child under W.Va.Code § 49-6-5(a)(6) [1996] [now West Virginia Code § 49-4-604(b)(6)], the circuit court shall give priority to securing a suitable adoptive home for the child and shall consider other placement alternatives, including permanent foster care, only where the court finds that adoption would not provide custody, care, commitment, nurturing and discipline consistent with the child's best interests or where a suitable adoptive home can not be found.

Syl. Pt. 3, *State v. Michael M.*, 202 W.Va. 350, 504 S.E.2d 177 (1998). Finally, "[t]he guardian ad litem's role in abuse and neglect proceedings does not actually cease until such time as the child is placed in a permanent home." Syl. Pt. 5, *James M. v. Maynard*, 185 W.Va. 648, 408 S.E.2d 400 (1991).

5

For the foregoing reasons, we find no error in the decision of the circuit court, and its September 28, 2017, order is hereby affirmed.

Affirmed.

**ISSUED**:  April 9, 2018

**CONCURRED IN BY**:

Chief Justice Margaret L. Workman
Justice Robin Jean Davis
Justice Menis E. Ketchum
Justice Allen H. Loughry II
Justice Elizabeth D. Walker